# In the United States Court of Federal Claims

No. 20-1211C
Filed: November 19, 2021
Re-issued: November 30, 2021[1]

|  |  |
|---|---|
| SUPERIOR OPTICAL LABS, INC., | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| *Defendant*. | ) ) ) |

Robert J. Sneckenberg, Crowell & Moring LLP, Washington, DC, for Plaintiff. John E. McCarthy, Jr. and Rina M. Gashaw of Crowell & Moring LLP, Washington, DC and Elizabeth Haws Connally, Connally Law, PLLC, San Antonio, Texas, *of counsel*.

Vincent D. Phillips, Jr., Commercial Litigation Branch, Civil Division, United States Department of Justice, for Defendant. Douglas K. Mickle, Robert E. Kirschman, Jr., and Brian M. Boynton, United States Department of Justice and Natica Chapman Neely, Office of General Counsel, United States Department of Veterans Affairs, *of counsel*.

## OPINION AND ORDER

**MEYERS, Judge**.

      Superior Optical successfully protested "the [Veterans Administration's ('VA')] decision to move the requirements that are currently set-aside for veteran-owned small businesses back to the federal AbilityOne program, which requires federal agencies to procure products and services from qualified non-profit agencies that employ people who are blind or otherwise severely disabled." *Superior Optical Labs, Inc. v. United States*, 150 Fed. Cl. 681, 685 (2020).[2] Superior now applies for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C.

---

[1] The Court issued this opinion under seal and directed the Parties to confer and propose any redactions pursuant to the protective order. Because the Parties advise that no redactions are necessary, the Court re-issues this opinion in full.

[2] During the protest, Winston-Salem Industries for the Blind participated as a Defendant-Intervenor. Because Winston-Salem has no role in Superior's fee application, it is not reflected in the caption of this opinion.

§ 2412. Because Superior satisfies all EAJA requirements for award and the Government's position was not substantially justified, the Court grants-in-part and denies-in-part Superior's application for attorney's fees under EAJA.

An EAJA award is appropriate when:

1. The Applicant submits an application for attorney's fees and other expenses within 30 days of the final judgment "including an itemized statement from any attorney or expert witness representing or appearing in [sic] behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B);

2. The Applicant's net worth "did not exceed $7,000,000 at the time the civil action was filed, and [the Applicant] had not more than 500 employees at the time the civil action was filed." *Id*. § 2412(d)(2)(B);

3. The Applicant is the prevailing party. *Id*. § 2412(d)(1)(B);

4. The Government's position was not substantially justified. *Id.*; and

5. There are no special circumstances that would make an award unjust. *Id*. § 2412(d)(1)(A).

*See also WHR Grp., Inc. v. United States*, 121 Fed. Cl. 673, 676 (2015) (discussing EAJA requirements). In addition, the Court may reduce or deny any award to the extent the applicant "engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). Even though the Parties focus almost entirely on whether the Government's position was substantially justified, the Court addresses each of these requirements to ensure that Superior satisfies them all.

### A. Superior timely filed its EAJA Application and supporting documentation.

Here, there is no dispute that Superior filed its application with supporting declaration and exhibits within 30 days of the final judgment. The Court's judgment became final on December 22, 2020, which was the day following the deadline for any party to file a notice of appeal.[3] Thus, the deadline for Superior's application was January 21, 2021. Superior timely filed its application on January 15, 2021. *See* ECF No. 56.

And Superior supports its application with a declaration of its President and Chief Executive Officer ("CEO"). This declaration states the total number of attorney hours and expenses Superior seeks to recover and attaches billing records reflecting this time. *See* ECF No. 56-1. Although the billing records include the hourly rate counsel charged Superior, Superior

---

[3] The Court entered judgment on October 21, 2020 and the Parties had 60 days to file a notice of appeal. Because the 60th day was Sunday, December 20, 2020, the Parties had until end of day on December 21st to file a notice of appeal and the judgment became final on December 22, 2020. RCFC 6(a)(1)(C).

only seeks reimbursement at the statutory rate. *Id*. ¶ 6; *see also id*. Attach. B & C (billing records).

### B.  Superior qualifies as a "party" under EAJA.

For corporate litigants, EAJA defines the term "party" to mean a corporation that had a net worth under $7,000,000 and employed fewer than 500 people when it filed the complaint. 28 U.S.C. § 2412(d)(2)(B). Superior's CEO states in his declaration that when it filed the complaint in September 2020, its net worth was below $7,000,000. ECF No. 56-1 ¶ 3. In addition, Superior attaches a balance sheet that shows its net worth was, in fact, below $7,000,000 in September 2020. *Id*. Attach. A at 4-6.[4] The Government does not have any basis to dispute this assertion. ECF No. 57 at 4.

As for the number of employees, Superior's CEO states in his declaration that it employed "roughly 120" employees in September 2020. ECF No. 56-1 ¶ 3. While the Government does not contest this representation in its filing, it did assert in the hearing that there was a size protest of Superior that potentially concerned the relevant period. The Government's belated reliance on the size protest fails. First, the Court generally disregards an argument raised for the first time in the hearing. *Cf. Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 507 n.25 (2009) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.") (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)) (emphasis in original). Second, even considering the size protests, Superior qualifies as a "party." The Court has found that Superior and one of its competitors have filed several size protests of each other in recent years. The size protests against Superior, however, do not indicate that it has (or ever had) more than 500 employees or a net worth over $7,000,000. Therefore, Superior qualifies as a "party" under EAJA.

### C.  Superior is a "prevailing party."

A prevailing party is one that "is granted some relief on the merits of its claim." *WHR Grp.*, 121 Fed. Cl. at 676-77 (citations omitted). Here, Superior obtained all the relief it asked for. And the Government concedes that Superior qualifies as a prevailing party. As the Government recognizes, "Superior has obtained a final judgment in its favor from the Court in this bid protest action, and the deadline for an appeal by the United States has expired, which qualifies Superior as a prevailing party." ECF No. 57 at 4.

### D.  The Government's position was not substantially justified.

EAJA provides that the Court "shall award to a prevailing party other than the United States fees and other expenses . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Therefore, when "the Government loses its case on the merits, it bears the burden of showing that its position was 'substantially

---

[4] Because the declaration attachments do not include page numbering, the Court refers to the page numbering in the ECF Header.

justified.'" *WHR Grp.*, 121 Fed. Cl. at 677 (citations omitted). Under EAJA, the "'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings." 28 U.S.C. § 2412(d)(2)(D); *see also Doty v. United States*, 71 F.3d 384, 385-86 (Fed. Cir. 1995) (rejecting the argument that the EAJA analysis deals only with the Government's position before the court).

The Government's position can be "substantially justified" for EAJA purposes even if it is incorrect. *E.g., Dalles Irrigation Dist. v. United States*, 91 Fed. Cl. 689, 697 (2010) (citing *Manno v. United States*, 48 Fed. Cl. 587, 589 (2001)). As the Supreme Court found, under EAJA, substantially justified means "'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). This standard is "no different from the 'reasonable basis in both law and fact' formulation." *Id.* at 565-66 (citations omitted). In "determin[ing] whether the overall position of the United States is substantially justified, trial courts are instructed to look at the *entirety* of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991) (emphasis added). Thus, even reasonable litigation positions may be outweighed by unreasonable agency actions taken prior to litigation. *Id.*

In this case, both the Government's litigation position and its pre-litigation actions were not reasonable.

> 1. <u>The Government's litigation position was not substantially justified.</u>
>
>> a) *The Government's litigation position was unreasonable because it contradicted the Consistency Act.*

As Judge Wheeler found, the Government's litigation position that Section 8127(d)(1) applies only to competitively awarded contracts was directly contrary to the Consistency Act. *Superior Optical*, 150 Fed. Cl. at 692 ("The Government and IFB misread the clear language of § 8127(d)(1), which is not limited to competitively awarded contracts."). And taking a position that is directly contrary to an Act of Congress is unreasonable. *Patrick v. Shinseki*, 668 F.3d 1325, 1333 (Fed. Cir. 2011) ("[W]here the government's position was directly contrary to the plain language of the controlling statute, it was not substantially justified even where it had been accepted by courts in other circuits.") (citing *Marcus v. Shalala*, 17 F.3d 1033, 1037-38 (7th Cir. 1994)).

Here, the Government's position directly contradicted the plain language of the Consistency Act, which addresses all contracts awarded pursuant to a Rule of Two determination—not just those that are competitively awarded. As Judge Wheeler explained, "[n]owhere in the Senate exception at § 8127(B)(i)(I) does it limit awards only to those using competitive procedures. Rather, the Senate exception applies to all contracts 'awarded under paragraph (1) [§ 8127(d)(1)].'" *Superior Optical*, 150 Fed. Cl. at 692 (second alteration in original) (quoting 38 U.S.C. § 8127(d)(2)(B)(i)(I)). The Government argued that noncompetitive sole-source contracts such as Superior's do not fall under § 8127(d)(1) because the phrase

"except as provided . . . in subsections (b) and (c)" expressly excludes noncompetitive sole-source contracts, which subsections (b) and (c) allow, from § 8127(d)(1). *See* ECF No. 31 at 15-17. However, that phrase does not exclude such contracts from the purview of § 8127(d)(1). It "merely indicates that the VA may exercise its discretion and choose not to conduct a Rule of Two analysis when issuing awards under a certain dollar threshold." *Superior Optical*, 150 Fed. Cl. at 692 (citation omitted). Whether or not the VA chooses to exercise such discretion, "once *any* award is issued to a veteran-owned small business pursuant to a Rule of Two determination it necessarily falls under § 8127(d)." *Id.* (emphasis in original).

Even if the plain language of the Consistency Act had been ambiguous, the Government's position was also contrary to Congress' clear intention of preventing the transitioning of some contracts back to the AbilityOne program through the § 8127(d)(2)(B)(i) exception. As Judge Wheeler found:

> It seems clear that Congress' intent in adding the exception to the Consistency Act was to prevent the VA from transitioning contracts previously awarded to veteran-owned small businesses as a result of a Rule of Two analysis back to the AbilityOne program. The Government and IFB concede that VISNs 2 and 7 were awarded pursuant to a Rule of Two analysis which determined that at least two veteran-owned small businesses were capable of performing the requirements at a fair and reasonable price.

*Id.* at 693 (citing ECF No. 29-1 at AR 20, 266). Thus, the contracts at issue in this case are included among the types of contracts Congress intended to prevent from transitioning back to the AbilityOne program. The Government was not substantially justified in assuming a litigation position that was contrary to the plain language of the Consistency Act.

      b) *The Government's litigation position unreasonably contradicted its own pre-litigation position.*

It was also unreasonable for the Government to employ a litigation position that contradicted its pre-litigation position. *Cf. Mann v. United States*, No. 98-312C, 2014 WL 3501454, at *3 (Fed. Cl. July 14, 2014) ("The government's position cannot be substantially justified when it violates established agency precedent or contradicts unambiguous regulations.") (citations omitted); *Geo-Seis Helicopters, Inc. v. United States*, 79 Fed. Cl. 74, 78 (2007) ("The government's position will not be found to be reasonable or substantially justified when explicit, unambiguous regulations directly contradict that position.") (citations omitted).

The VA set forth its pre-litigation interpretation of the Consistency Act in several places, including: (1) a 2019 Justification and Approval ("J&A"), s*ee* ECF No. 29-1 at AR 22-27; and (2) a 2020 Class Deviation that implemented the Consistency Act into the VA Acquisition Regulation. *See Superior Optical*, 150 Fed. Cl. at 687 (citing ECF No. 30 at 49-53). In its J&A, the VA acknowledged that "[w]here a product or service is on the [AbilityOne Procurement] List and ordinarily would result in the contract being awarded to a nonprofit qualified under the [Javits-Wagner-O'Day Act], the [Veterans Benefits Act of 2006 ('VBA')] unambiguously demands that priority be given to veteran-owned small businesses." ECF No. 29-1 at AR 19

5

(quoting *PDS Consultants, Inc. v. United States*, 907 F.3d 1345, 1360 (Fed. Cir. 2018)) (some alterations in original). In this case, in accordance with this interpretation, the VA conducted a Rule of Two analysis and determined that two or more veteran-owned small businesses could perform the contract at a fair and reasonable price. The VA, however, did not complete a competitive procurement in time and needed to award temporary sole-source contracts to continue performance until it could conduct a new procurement. *Id.* at AR 20.

Similarly, the VA's Class Deviation states that covered products or services procured by a Rule of Two determination between December 22, 2006 and August 7, 2020 "shall continue to be procured under VA's [Service-Disabled Veteran-Owned Small Business ('SDVOSB') or Veteran-Owned Small Business ('VOSB')] set-aside program, provided two or more SDVOSBs/VOSBs are expected to provide the same or similar product at a fair and reasonable price." ECF No. 30 at 50. As Judge Wheeler found, "[t]he VA's Class Deviation says nothing about competitive awards. Instead, it focuses only on contracts that were issued pursuant to a Rule of Two determination and thus had to be 'set-aside' for veteran-owned small businesses." *Superior Optical*, 150 Fed. Cl. at 694.

Accordingly, the Government's litigation position that § 8127(d)(1) only applies to competitively awarded contracts unreasonably contradicts its pre-litigation position that the Consistency Act demands priority be given to veteran-owned small businesses when a Rule of Two analysis is conducted and satisfied, regardless of whether the contract was competitively awarded.

> c) *The novelty of the statutory interpretation question at issue in this case does not persuade the Court that the Government's position was substantially justified.*

The Government argues that the novelty of the statutory interpretation question at the heart of this case, which was a matter of first impression, renders the Government's litigation position substantially justified. *See* ECF No. 57 at 5-6. The Court disagrees. It is true that "in assessing the justification of the government's position, courts consider the clarity of the governing law . . . and whether the legal issue was novel or difficult." *Norris v. S.E.C.*, 695 F.3d 1261, 1265 (Fed. Cir. 2012) (citing *Nalle v. C.I.R.*, 55 F.3d 189, 192 (5th Cir. 1995)). However, "[t]he novelty of a legal issue does not by itself satisfy the government's burden of proof under EAJA." *Dalles Irrigation Dist.*, 91 Fed. Cl. at 698. That is why the assessment of the Government's overall position requires examination of "the entire record of the proceedings without reference to *per se* rules." *Id.* (first citing *Gutierrez v. Barnhart,* 274 F.3d 1255, 1261 (9th Cir. 2001) ("[T]here is no per se rule that EAJA fees cannot be awarded where the government's litigation position contains an issue of first impression.") (alteration in original); and then citing *United States v. Douglas,* 55 F.3d 584, 588-89 (11th Cir. 1995) (rejecting the government's contention that its position was substantially justified because it raised a question of first impression)).

The novelty of the question at hand here, a matter of first impression, does not justify denying Superior's application. As explained above, the Government's position was clearly not substantially justified. More importantly, the Government's argument threatens to undermine EAJA. As the Federal Circuit made clear, Congress recognized "the premise that individuals and

6

small businesses 'may be deterred from seeking review of, or defending against[,] unreasonable governmental action because of the expense involved in securing the vindication of their rights.'" *Gavette v. Off. of Pers. Mgmt.*, 808 F.2d 1456, 1459 (Fed. Cir. 1986) (en banc) (quoting H.R. REP. NO. 1418, 96th Cong., 2d Sess. 5, reprinted in 1980 U.S. CODE CONG. & AD. NEWS 4984, 4984).  To address this concern, Congress adopted EAJA "to 'reduce the deterrents and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees and other expenses against the United States.'"  *Id*. at 1459-60 (quoting H.R. REP. NO. 1418, 96th Cong., 2d Sess. 6, reprinted in 1980 U.S. CODE CONG. & AD. NEWS 4984, 4984); *see also Dalles Irrigation Dist.*, 91 Fed. Cl. at 705 ("[T]he purpose of EAJA [is] to remove the financial disincentive to challenge wrongful government action.") (quoting *Payne v. Sullivan*, 977 F.2d 900, 903 (4th Cir. 1992)).  Given that the first challenge under a statute is the most uncertain, automatically precluding an EAJA award for the first challenger would amplify the financial disincentive to challenging wrongful government action rather than reducing it.  That is not the law under EAJA.

### d) *Superior obtained all the relief it sought.*

Finally, the Government argues that because the Court did not hold that *all* sole-source contracts are included in § 8127(d)(2)(B)(i)(I)'s prohibition on transitioning contracts to the AbilityOne program, the Court's conclusion was "fact based" and the Government was therefore substantially justified in asserting its position.  *See* ECF No. 57 at 6-8.  But this is a strawman argument because Superior never argued that *all* sole-source contracts fall under § 8127(d)(2)(B)(i)(I); it simply asserted that all contracts awarded after a Rule of Two analysis could not be transitioned to the AbilityOne program.  *See* ECF No. 58 at 3.  As Judge Wheeler explained:

> The Court agrees with Superior Optical that Section 8127(d)(1), formerly § 8127(d), refers to all contracts awarded pursuant to a Rule of Two analysis.  Contrary to the Government's and IFB's assertion, § 8127(d)(1) is not limited only to those contracts that were awarded pursuant to a Rule of Two analysis and on the basis of competition.

*Superior Optical*, 150 Fed. Cl. at 692.  In other words, Judge Wheeler agreed with Superior on its entire argument and rejected the Government's counterargument.  Nothing about that outcome supports the Government's argument that it was substantially justified.

### 2. The Government's pre-litigation actions were not substantially justified.

Even if the Government's litigation position had been substantially justified, its pre-litigation actions—which the Court must also consider—were not.  As Judge Wheeler held, it was the VA's own actions that "led to extensive delays and ultimately a failed competitive solicitation" in this case.  *Id.* at 694.  Here, after its Rule of Two analysis, the VA continued to promise Superior that it would eventually conduct a competitive procurement.  But in the meantime, the VA issued sole source bridge contracts to ensure that it was able to continue obtaining lenses for its patients.  Then, under its new interpretation, the VA declared that the contracts no longer qualified under § 8127 to stay with the veteran-owned small businesses

7

because Superior's bridge contracts were not competitively awarded and the VA would, therefore, transition them to the AbilityOne program. ECF No. 29-1 at 19, 24, & 163. Here, too, Judge Wheeler aptly described what happened: the VA "continued to make empty promises to Superior Optical, assuring it that a competitive award was forthcoming while extending what were promised to be temporary bridge contracts just to pull the rug out from under Superior Optical." *Superior Optical*, 150 Fed. Cl. at 694.

Because the Government's overall position both before and during litigation was unreasonable, the Government's position was not substantially justified.

### E.    No special circumstances make an award to Superior unjust.

The Government argues that if the Court allows fees, it should reduce those fees that the Government attributes to excessive billing. According to the Government, there are two classes of billing records that it asserts the Court should disallow. The Court addresses each in turn.

#### 1.    Connally Law, PLLC's fees.

The Government challenges the "fees attributable to Connally Law PLLC, . . . a law firm that appears not to have done any substantive work on this litigation, but merely participated in phone calls with Superior's litigation counsel." ECF No. 57 at 9-10. But the Connally firm's billing records do not support the Government's argument that it did not perform any substantive work on this matter. To the contrary, Connally's records show that it assisted the review of the administrative record, reviewed and edited pleadings, and reviewed and edited Superior's motions. *See* ECF No. 56-1 at 8-15 (Connally firm's billing records). And according to Superior's CEO, Connally "is Superior's normal counsel and is familiar with Superior's business . . . ." *Id*. at 1 ¶ 4. Given Connally's history as Superior's counsel and experience with the contracts and legislation at issue here, it is not excessive nor duplicative for Superior to recover for these costs.

The Court does, however, find that some of the Connally firm's time is not allowable under EAJA. First, almost all Connally's August 2020 time appears to have been time spent communicating with the VA regarding the disputed contract. This time appears to relate to Superior's pre-litigation efforts to avoid litigation altogether. *See* ECF No. 56-1 at 8-9. While this certainly shows that Superior did nothing to extend this litigation, *see* 28 U.S.C. § 2412(d)(1)(C) (allowing reduction of fees where applicant "engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy"), that does not make this time recoverable.

As Judge Bruggink explained, "the Federal Circuit has [held] 'expenses of an attorney that are not incurred or expended *solely or exclusively* in connection with the case before the court . . . cannot be awarded under the EAJA.'" *Cal. Marine Cleaning, Inc. v. United States*, 43 Fed. Cl. 724, 731-32 (1999) (quoting *Oliveira v. United States*, 827 F.2d 735, 744 (Fed. Cir. 1987)) (ellipses in original); *see also Oliveira*, 827 F.2d at 744 ("[T]he trial court, in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, which expenses are those customarily charged to the client where the case is tried."). The communications with the VA do

not appear to be "incurred or expended solely or exclusively in connection with" this case. *See* ECF No. 56-1 at 7-9 (August 2020 billing records). As such, they are not allowable in this action.

There is one potential exception, however, for time on August 24, 2020, when Ms. Connally spent some portion of her billed time speaking to Mr. McCarthy of Crowell about the potential for this litigation. *Id*. at 8. The Court also checked Mr. McCarthy's time records and his entry combines his discussion with Ms. Connally and other work. *Id.* at 18. Because Ms. Connally's time entry mixes potentially allowable and unallowable time, the Court has no way to determine how much of the billed time is allowable. The Court, therefore, reduces Superior's claim by 4.7 hours for August 2020. *See, e.g.*, *Cal. Marine*, 43 Fed. Cl. at 732 (disallowing fees when the plaintiff had not provided a means to determine which portions of entries related to court litigation as opposed to potential GAO litigation).

Second, Superior may not recover for time that Connally worked but did not charge Superior for. Connally's invoices show that it did not charge Superior for 1.3 hours of work in September 2020 that Superior includes in its application. ECF No. 56-1 at 11-12 (entries labeled "NC" and showing $0.00 due). And Connally did not charge for 1.7 hours of time claimed in October 2020. *Id*. at 14. Because Superior did not incur any fees for this work, it is not reasonable to award fees for that time. Therefore, the Court reduces Superior's claim by 1.3 hours in September 2020 and 1.7 hours in October 2020.

            2.     <u>Crowell & Moring LLP's fees.</u>

The Government argues that attorneys for Crowell & Moring LLP spent excessive time "conferring" and that time reflects duplication of effort. ECF No. 57 at 10. Superior's team at Crowell includes one partner, one counsel, and one associate. *E.g.*, ECF No. 56-1 at 19 (identifying attorneys billing time to this matter).[5] According to the Government, these attorneys duplicated efforts as shown by the "fact" that these attorneys have time entries reflecting that they were "conferring" about this case. ECF No. 57 at 10. According to the Government, "[t]hese internal discussions do not appear to be related to any legal complexity in this case but are the result of plaintiff's counsel's decision to staff numerous attorneys on this matter." *Id*. While the Court agrees that the outcome of this case was straightforward, it does not see the duplication of efforts that the Government alleges.[6] Based on the billing records, Superior's various attorneys at Crowell "conferred" once every few days (perhaps more immediately preceding a filing or hearing). *See generally* ECF No. 56-1 at 17-31 (Crowell & Moring billing

---

[5] The Government argues that "Superior's counsel included an *additional* partner level attorney, in addition to record and arguing counsel." ECF No. 57 at 10 (emphasis added). But, as the billing records clearly demonstrate, Crowell staffed one partner, one counsel, and one associate on this matter. While the counsel who served as attorney of record argued this matter ably, he was not a partner at Crowell.

[6] The Government's arguments are somewhat in tension with themselves. On the one hand, the Government says this case is so novel that the Court should not award any fees. On the other hand, the Government argues that this case is so straightforward that it is excessive for Superior's counsel to confer with each other.

9

records). And these discussions appear to be attorneys coordinating their work, apparently to avoid duplication. *See, e.g., id.* at 24 (RMG 9/21/20 entry regarding conferring with counsel of record regarding research and subsequent RMG entries performing that research without further conferring). There is nothing about that level of internal communication that indicates that Crowell was billing for duplicative work because conferring like Crowell did here does not cross the line "'at which thorough and diligent litigation efforts become overkill.'" *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004) (quoting *Okla. Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1347 (D.C. Cir. 1991)). Therefore, the Court declines to reduce Superior's recovery because of time its counsel at Crowell spent conferring in this case.

### F. Calculation of Fees

EAJA caps the hourly rate at which the Court may award fees at $125, subject to cost-of-living adjustments and other "special factor[s]." 28 U.S.C. § 2412(d)(2)(A). As Judge Lettow explained, the cost-of-living adjustment "should be freely granted." *Dalles Irrigation Dist.*, 91 Fed. Cl. at 705 (citations omitted). And here, the Government does not challenge the adjustment nor Superior's calculation of it. That said, the Court will analyze Superior's methodology and calculations to ensure that it properly adjusts EAJA's hourly rate.

Superior seeks to calculate and apply a cost-of-living adjustment based on the methodology this Court accepted in *WHR Group*. ECF No. 56 at 2 n.2. Under this methodology, Superior divided the statutory cap of $125 per hour by the Consumer Price Index ("CPI") in March 1996, which was the month Congress implemented the statutory cap on hourly fees awarded under EAJA. *Id.*; *see also WHR Grp.*, 121 Fed. Cl. at 679. Superior then multiplied this amount by the CPI for each month of the litigation here, which included August, September, and October 2020. ECF No. 56 at 2.[7] Therefore, the Court allows the cost-of-living adjustment that Superior seeks in this case.

The Court allows Superior's fees as set forth in the table below:

| Attorney's Fees | | | | |
|---|---|---|---|---|
| Month | Hours Claimed | Hours Awarded | Hourly Rate | Total |
| August 2020 | 20.3 | 15.6 | $208.67 | $3,255.25 |

---

[7] There are two distinctions in Superior's methodology here as compared to the Court's in *WHR Group*. First, in *WHR Group*, the Court multiplied the $125 cap by the CPI for the period in litigation and then divided by the March 1996 CPI. *See WHR Grp.*, 121 Fed. Cl. at 679. Because the result of this method and Superior's method is identical, this is a distinction without a difference. Second, the Court in *WHR Group* utilized "the 'mid-point' method" in which it took the month in the middle of the months for which an award was made and calculated the cost-of-living adjustment for all periods based on that mid-point month's CPI. *Id.* Here, Superior chose to calculate each month separately, which provides a more accurate adjustment than the mid-point method.

10

| | | | | |
|---|---|---|---|---|
| September 2020 | 112.1 | 110.8 | $208.96 | $23,152.77 |
| October 2020 | 89.1 | 87.4 | $209.05 | $18,270.97 |
| | | | Total: | $44,678.99 |

## II.   CONCLUSION

For the reasons stated above, the Court grants-in-part and denies-in-part Superior's application for attorney's fees under EAJA (ECF No. 56).  The Clerk is directed to enter judgment awarding Superior Optical Labs, Inc. attorney's fees in the amount of $44,678.99 pursuant to EAJA.

**IT IS SO ORDERED**.

s/ Edward H. Meyers<br>
Edward H. Meyers<br>
Judge